DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff Laurin Olson is a former employee of defendant Holland Computers Inc. Defendant William Holland is the president of Holland Computers, owns 80% of its shares, and manages its day-to-day operations. Ms. Olson sued Holland Computers and Mr. Holland, alleging invasion of privacy, defamation, and malicious prosecution. The trial court granted summary judgment to Holland Computers and Mr. Holland, and Ms. Olson has appealed. She has argued (1) that the trial court incorrectly failed to compel Mr. Holland's wife to answer questions at her deposition regarding conversations she had with Mr. Holland and (2) that the trial court incorrectly granted summary judgment to *Page 2 
Holland Computers and Mr. Holland. This Court affirms the trial court's judgment because (1) Ms. Olson has failed to cite the specific questions to which she claims the trial court should have compelled answers and (2) there are no genuine issues of material fact and Holland Computers and Mr. Holland are entitled to judgment as a matter of law on Ms. Olson's invasion of privacy, defamation, and malicious prosecution claims.
 I. {¶ 2} Holland Computers sells and services personal computers. Ms. Olson worked as a secretary for Holland Computers from February 1999 through February 2004. Her claims in the trial court were based upon events that allegedly occurred during and shortly after her employment by Holland Computers.
 {¶ 3} During the time Ms. Olson worked for Holland Computers, she became friendly with Mr. Holland's wife, Sheryl Holland, and would sometimes exchange e-mails or have telephone conversations with her, both from work and from home. During 2002, Mr. and Mrs. Holland separated. Although they were living apart, they continued to see each other and, in fact, jointly purchased a home. Ms. Olson maintained her friendship with Mrs. Holland and, according to her, both Mr. and Mrs. Holland would tell her details of their relationship.
 {¶ 4} During September 2002, Ms. Olson acquired two cellular telephones from T-Mobile. She testified during a deposition in this case that she told Mr. Holland that she was looking for two cell phones and he suggested that she get *Page 3 
them from T-Mobile because that was who Holland Computers dealt with and "it will be cheaper for you if you use the Holland contract." She further testified that, when she ordered the telephones, T-Mobile asked for Holland Computers' federal identification number, which Mr. Holland gave her so she could provide it to T-Mobile.
 {¶ 5} According to Mr. Holland, the extent of his conversation with Ms. Olson regarding the cell phones was that she asked if she could have the bill for them sent to the office so her husband would not see it and he agreed. He denied having provided her Holland Computers' federal identification number. He also denied that Holland Computers dealt with T-Mobile, testifying that it had its cellular telephone account with Verizon Wireless.
 {¶ 6} During January 2004, Mr. Holland was unable to find a folder containing certain confidential financial information related to KT Switching, Holland Computers' largest customer. Around that same time, Ms. Olson repaid him $1000 he had previously lent her. He also noticed what he believed to be strange behavior on her part. Believing that she might have sold information from the missing folder to KT, he placed a tape recorder on her telephone line. He also mentioned his suspicions to his brother, a 20% owner and vice president of Holland Computers.
 {¶ 7} On a Friday afternoon near the end of January 2004, Ms. Olson was preparing to be off work the following Monday, Tuesday, and Wednesday. She *Page 4 
told Mr. Holland's brother that she needed to show him where some things were, because she was not going to be there. According to her, he asked if Mr. Holland had fired her, and she thought he was joking so she said yes. He then said something about Mr. Holland's suspicion that she had sold confidential information to KT. She became upset and left work without talking to Mr. Holland.
 {¶ 8} Ms. Olson testified that she did talk to Mr. Holland by telephone at least three times over the next few days. During one of those conversations, she asked him if he had "tapped" her telephone at work. She knew that he had a tape recorder that he could place on telephone lines at the office. In fact, she had previously had him record a telephone conversation she had had with her husband's employer. According to her, he acknowledged that he had "tapped" her telephone in an effort to discover who was "leaking" information to KT. In either the same or a separate telephone conversation, he also instructed her to never call his wife again. She testified that, when she was done with that conversation with Mr. Holland, she immediately telephoned Mrs. Holland. When her conversation with Mrs. Holland ended, she received a telephone call from Mr. Holland in which he shouted that he thought he had told her not to call his wife again. Following that conversation, Ms. Olson telephoned Jeff Adams, another employee of Holland Computers, and instructed him to tell Mr. Holland that she quit. *Page 5 
 {¶ 9} Ms. Olson testified that, during that same time period, after her conversation with Mr. Holland's brother but before she quit her job, Mrs. Holland told her to no longer send her e-mail at the address she had been using. According to Ms. Olson, Mrs. Holland said that she thought Mr. Holland had been reading Mrs. Holland's e-mail. Mrs. Holland specifically told her that Mr. Holland had, in fact, printed an e-mail from Ms. Olson to Mrs. Holland and read it to Mrs. Holland. Ms. Olson also testified that she later had a conversation with a former employee of Holland Computers who supposedly told her that Mr. Holland had been intercepting Ms. Olson's e-mail "for a long time."
 {¶ 10} Mr. Holland testified at a deposition in this case that, a month or two after Ms. Olson quit, Holland Computers began receiving collection calls from T-Mobile. He told T-Mobile that the account should be in Ms. Olson's name and that he had not given her permission to use Holland Computers' federal identification number. According to him, he telephoned Ms. Olson and asked her to meet him at the T-Mobile store to transfer her cellular telephone account from Holland Computers to her and she refused to meet him. He testified that T-Mobile told him the only other way to have Holland Computers removed from the account was for him to file a police report, which he did. He specifically told the police that he just wanted Holland Computers off the account and did not want to prosecute Ms. Olson for using Holland Computers' federal identification number. *Page 6 
 {¶ 11} Ms. Olson acknowledged that she had fallen behind on the T-Mobile account. She claimed, however, that she had made arrangements to pay off the account. According to her, she then received a telephone call from the Elyria Police Department in which an officer told her she needed to make arrangements to meet Mr. Holland at the T-Mobile store to transfer the account. She claimed that she attempted to telephone him to arrange a time to do so, but he never returned her calls. Neither Holland Computers nor Ms. Olson ever paid the account.
 II. A. {¶ 12} Ms. Olson's first assignment of error is that the trial court incorrectly denied her motion to compel Mrs. Holland to answer questions regarding conversations she had with Mr. Holland. According to Ms. Olson, those conversations were not protected by the spousal privilege because they did not take place "during coverture."
 {¶ 13} Rule 16(A)(7) of the Ohio Rules of Appellate Procedure requires an appellant to support her argument with references to the parts of the record on which she relies. While, in her argument to this Court, Ms. Olson has asserted that Mrs. Holland was not entitled to rely on the spousal privilege to avoid answering questions at her deposition, she has failed to provide any citations to pages of the transcript of Mrs. Holland's deposition at which she refused to answer questions *Page 7 
on that basis. Similarly, her motion to compel in the trial court failed to provide any such citations. This Court has repeatedly held that "[i]t is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." E.g., State v. Ashby, 9th Dist. No. 06CA0077-M, 2007-Ohio-3118, at ¶ 26 (quoting State v.Taylor, 9th Dist. No. 2783-M, 1999 WL 61619, at *3 (Feb. 9, 1999)). Ms. Olson's first assignment of error, therefore, must be overruled.
 {¶ 14} Despite Ms. Olson's failure, this Court has reviewed the transcript of Mrs. Holland's deposition in an effort to determine whether she in fact refused to answer any questions in reliance upon the spousal privilege. The transcript includes a number of discussions between Mrs. Holland's lawyer and Ms. Olson's lawyer regarding whether certain questions called for information protected by the spousal privilege. Each of those conversations, except the last one, ended with Mrs. Holland answering the question asked her. The last question was whether Mr. Holland ever read Mrs. Holland an e-mail that Ms. Olson had sent her. Mrs. Holland's lawyer instructed her not to answer the question, and Ms. Olson's lawyer adjourned the deposition in order to file her motion to compel.
 {¶ 15} Assuming without deciding that Ms. Olson was entitled to an answer to the question asked Mrs. Holland, she was not prejudiced by the trial court's refusal to order Mrs. Holland to provide that answer. Mr. Holland acknowledged during his deposition that he had access to Mrs. Holland's e-mail account, had on *Page 8 
one occasion read an e-mail from Ms. Olson to Mrs. Holland, and had talked to Mrs. Holland about that e-mail. Compelling an answer to the question at issue would have simply provided additional evidence of something Mr. Holland had already acknowledged. Accordingly, Ms. Olson suffered no prejudice as a result of the trial court's denial of her motion to compel. If that denial was error, therefore, it was harmless error. See Rule 61, Ohio Rules of Civil Procedure. Ms. Olson's first assignment of error is overruled.
 B. {¶ 16} Ms. Olson's second assignment of error is that the trial court incorrectly granted summary judgment to Holland Computers and Mr. Holland. In reviewing a trial court's order ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co.,66 Ohio App. 3d 826, 829 (1990).
 1. {¶ 17} Ms. Olson has argued that the trial court incorrectly granted Holland Computers and Mr. Holland summary judgment on her invasion of privacy claim. According to her, there were genuine issues of material fact regarding whether Holland Computers and Mr. Holland invaded her privacy by intercepting her e-mail, *Page 9 
by tape recording her telephone calls, and by Mr. Holland telephoning her at home and shouting at her.
 {¶ 18} The Ohio Supreme Court first recognized the tort of invasion of privacy in Housh v. Peth, 165 Ohio St. 35, paragraph one of the syllabus (1956). In that case, the court recognized three different types of activities that could constitute an actionable invasion of privacy. The one relevant to this case was the third: "[T]he wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."Id, paragraph two of the syllabus. In order to establish a wrongful intrusion into private activities, a plaintiff must show that he or she had a reasonable expectation of privacy in the area allegedly intruded. See Peitsmeyer v. Jackson Twp. Bd. of Trustees, 10th Dist. No. 02AP-1174, 2003-Ohio-4302, at ¶ 27-28.
 {¶ 19} Holland Computers and Mr. Holland argued to the trial court that Ms. Olson did not have a reasonable expectation of privacy in either her e-mails sent using her computer at work or her telephone calls made using her telephone at work. Holland Computers' Handbook for Employees contained warnings that the company would "from time to time" examine employees' e-mail and monitor their telephone calls. Ms. Olson denied ever being provided a copy of the handbook with those warnings, although Holland Computers had a copy of a receipt for a *Page 10 
handbook with her signature on it. She claimed the receipt was for a different handbook without the warnings.
 {¶ 20} Regardless of whether she ever saw the warnings in the handbook, however, she acknowledged that she knew Mr. Holland had access to her e-mail. She testified that he had the password to access her e-mail, as well as the password to access her computer. She further acknowledged knowing that Mr. Holland had a tape recorder that he sometimes used to record telephone calls at Holland Computer. In view of her knowledge of Holland Computers' access to her e-mail and telephone calls, she did not have a reasonable expectation of privacy in either.
 {¶ 21} In addition, she failed to establish a genuine issue regarding whether Mr. Holland had actually intercepted her e-mail by accessing her e-mail account. The only evidence she provided that tended to prove that Mr. Holland accessed her e-mail account was an inadmissible hearsay statement allegedly made to her by a former Holland Computers' employee and an inadmissible hearsay statement by Mrs. Holland that she believed Mr. Holland was intercepting her e-mail. Mr. Holland acknowledged that he had accessed one e-mail from Ms. Olson to Mrs. Holland, but testified he had done so by signing onto Mrs. Holland's e-mail account with her permission. Ms. Olson's speculation that Mr. Holland intercepted her e-mail was not sufficient to establish a genuine issue of fact.
 {¶ 22} Similarly, Ms. Olson failed to establish a genuine issue regarding whether Mr. Holland had ever listened to her telephone conversations. While he *Page 11 
acknowledged that he placed a tape recorder on Ms. Olson's telephone line, he denied that he ever listened to the resulting recording. Ms. Olson did not present any evidence tending to prove that he had done so.
 {¶ 23} Although Ms. Olson has also argued to this Court that Mr. Holland invaded her privacy by shouting at her during a telephone call he placed to her at her home, she failed to raise this argument in response to Holland Computers and Mr. Holland's motion for summary judgment in the trial court. Because she did not raise this issue at the proper time in the trial court, this Court will not consider it on appeal. See Bank One, N.A. v. Swartz, 9th Dist. No. 03CA008308,2004-Ohio-1986, at ¶ 17. Further, in her brief to this Court, she has failed to cite a single authority to support her argument that the telephone conversation she claims she had with Mr. Holland would constitute an actionable invasion of privacy. See, e.g., State v.Ashby, 9th Dist. No. 06CA0077-M, 2007-Ohio-3118, at ¶ 26 (quotingState v. Taylor, 9th Dist. No. 2783-M, 1999 WL 61619, at *3 (Feb. 9, 1999)).
 {¶ 24} The trial court did not err by granting summary judgment to Holland Computers and Mr. Holland on Ms. Olson's invasion of privacy claim. To the extent her second assignment of error is related to her invasion of privacy claim, it is overruled.
 2. {¶ 25} Ms. Olson has argued that the trial court incorrectly granted Holland Computers and Mr. Holland summary judgment on her defamation claim. *Page 12 
According to her, Mr. Holland defamed her by telling T-Mobile and the Elyria Police Department that she had used Holland Computers' tax identification number without permission and by telling his brother that she had "leaked" Holland Computers' information to KT.
 {¶ 26} In regard to Mr. Holland's statements to T-Mobile and the Elyria Police Department, Ms. Olson is again trying to raise arguments that she did not raise before the trial court. This Court will not address them.
 {¶ 27} A cause of action for defamation consists of five elements: (1) a false and defamatory statement; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) that was either defamatory per se or caused special harm to the plaintiff. Gosden v.Louis, 116 Ohio App. 3d 195, 206 (1996). Holland Computers and Mr. Holland have argued that Mr. Holland's statement to his brother, a 20% owner and vice president of Holland Computer was within a qualified privilege and that, therefore, Ms. Olson cannot establish the third essential element of her defamation claim.
 {¶ 28} The Ohio Supreme Court recognized that five things must be true for
a statement to be within a qualified privilege:
 The essential elements [of a qualified privilege] are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. *Page 13 
 Hahn v. Kotten, 43 Ohio St. 2d 237, 244 (1975) (quoting50 Am. Jur. 2d 698, Libel and Slander, Section 195) (emphasis added by the court inHahn). Ms. Olson has argued that Mr. Holland's statement to his brother was not privileged because, according to her, it was not made in good faith. She has asserted that Mr. Holland's statement that he believed she had provided information to KT was part of a "ruse" to justify eavesdropping on her conversations with Mrs. Holland about Mrs. Holland's relationship with Mr. Holland.
 {¶ 29} Ms. Olson's argument, however, is based upon a misapprehension of "good faith" in this context. Good faith for purposes of a qualified privilege does not involve a defendant's actual motive in publishing the statement at issue:
 "Good faith" exists where the relationship between the publisher and the listener is such as to afford reasonable grounds for supposing an innocent motive for giving the information. In determining the existence of good faith, a court is unconcerned with a defendant's particular motive.
Austin v. Peterson, 9th Dist. No. 2735-M, 1999 WL 11235, at *3 (internal citations omitted).
 {¶ 30} Mr. Holland spoke to only one person about his belief that Ms. Olson might have been supplying Holland Computers' information to KT, Holland Computers' vice president and part owner. The relationship between Mr. Holland and his brother, as owners and officers of the company, establishes reasonable grounds to suppose an innocent motive for Mr. Holland to tell his *Page 14 
brother about his suspicion. Accordingly, Mr. Holland's statement to his brother was within a qualified privilege.
 {¶ 31} If a statement is made within a qualified privilege, a plaintiff can only overcome the privilege by producing clear and convincing evidence that the defendant acted with actual malice.Jacobs v. Frank, 60 Ohio St. 3d 111, paragraph two of the syllabus (1991). Ms. Olson has not even suggested that Mr. Holland acted with actual malice.
 {¶ 32} The trial court did not err by granting summary judgment to Holland Computers and Mr. Holland on Ms. Olson's defamation claim. To the extent her second assignment of error is related to her defamation claim, it is overruled.
 3. {¶ 33} Finally, Ms. Olson has argued that the trial court incorrectly granted Holland Computers and Mr. Holland summary judgment on her malicious prosecution claim. Mr. Holland reported to the Elyria Police Department that Ms. Olson had fraudulently used Holland Computers' federal identification number to open an account with T-Mobile. Ms. Olson claims that Mr. Holland gave her permission to use the number, with the understanding that she would be responsible for paying the account.
 {¶ 34} An action for malicious prosecution requires a plaintiff to show "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the defendant." Willis Linnen Co. *Page 15 L.P.A. v. Linnen, 9th Dist. No. 22452, 2005-Ohio-4934, at ¶ 25 (quotingRogers v. Barbera, 170 Ohio St. 241, paragraph one of the syllabus (1960)). Criminal proceedings are instituted when (1) process is issued to bring the accused before an official or tribunal to determine whether the accused is guilty or should be held for later determination of guilt or innocence, (2) an indictment is returned or an information is filed against the accused without the issuance of process, or (3) the accused is lawfully arrested on a criminal charge. 3 Restatement (Second) of Torts, Sec. 654 (1977).
 {¶ 35} In this case, no judicial proceedings were instituted, Ms. Olson was not arrested or ordered to appear before a tribunal, and she was not indicted for or charged with any crime. When Mr. Holland made his report, he told the police that he did not wish to prosecute the case but merely needed to file a police report in order to remove his company's name from Ms. Olson's T-Mobile account. The Elyria Police Department took the report and notified Ms. Olson that she would need to make payment arrangements with Mr. Holland, but took no other action. The mere filing of the report did not constitute institution of proceedings for the purpose of a malicious prosecution claim. Accordingly, Ms. Olson cannot sustain a claim for malicious prosecution. To the extent her second assignment of error is related to her malicious prosecution claim, it is overruled. *Page 16 
 III. {¶ 36} Ms. Olson's assignments of error are overruled. The judgment of the Lorain County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to appellant. *Page 17 
 SLABY, P. J. CARR, J. CONCUR *Page 1