[Cite as *J.P. v. T.H.*, 2020-Ohio-320.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

J. P.

    Appellee

    v.

T. H.

    Appellant

C.A. No.     19CA011469


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    15CV185623

DECISION AND JOURNAL ENTRY

Dated: February 3, 2020

CALLAHAN, Judge.

{¶1} Appellant, T.H., appeals a judgment that found him liable for assault, battery, defamation, and invasion of privacy. This Court affirms in part and reverses in part.

I.

{¶2} T.H. and J.P. used to be neighbors, but their relationship was strained, at best. T.H., who believed that J.P. made frequent video recordings of his neighbors, found J.P.'s behavior unusual. J.P. believed that T.H.'s movements around the neighborhood on foot, by bicycle, and by car were driven by a desire to harass him. On June 22, 2014, a confrontation between the two neighbors occurred. On that date, it is undisputed that J.P. noticed T.H. riding his bicycle in their cul de sac, a path that took him past J.P.'s residence; that J.P. began recording video of T.H. and announced in a loud voice that he was not intimidated by T.H.'s actions; and that J.P. ultimately pulled a gun and pointed it at T.H. What happened in between these events is less clear, and the implications that flow from those events form the basis for this case.

{¶3} Immediately after the date in question, J.P. petitioned for a civil protection order restraining T.H. *J.P. v. T.H.*, 9th Dist. Lorain No. 14CA010715, 2016-Ohio-243, ¶ 5 ("*J.P. I*"). A magistrate issued a temporary ex parte order, but after a full hearing, the trial court denied the petition on July 11, 2014. *Id*. at ¶ 5-6. Concluding that J.P. had failed to prove his case by a preponderance of the evidence, the trial court observed that with respect to the alleged assault, "the only independent witness testified that [J.P.], not [T.H.,] initiated the assault." This Court ultimately affirmed the trial court's decision. *Id*. at ¶ 37. In the meantime, J.P. also filed a complaint against T.H. for assault and battery, defamation, and invasion of privacy through intrusion upon his seclusion. In the context of that litigation, J.P. moved for an ex parte temporary restraining order arguing, again, that T.H. and his daughter M.H. were "continuing to stalk, menace, and/or harass" him. The trial court denied the motion without a hearing.

{¶4} T.H. moved for summary judgment on each of J.P.'s claims, arguing that the trial court's decision in the CPO case fully resolved all issues related to the June 22, 2014, incident and, consequently, that J.P.'s claims were res judicata. The trial court granted summary judgment to T.H., and J.P. appealed. This Court reversed the trial court's decision granting summary judgment on the basis of res judicata, concluding that "[J.P.'s] failure to assert his tort claims contemporaneously with his petition for a civil stalking protection order did not preclude [him] from subsequently bringing a civil action against [T.H.]." *J.P. v. T.H.*, 9th Dist. Lorain No. 15CA010897, 2017-Ohio-233, ¶ 28 ("*J.P. II*"). This Court also noted that J.P.'s civil claims against T.H. alleged facts that were not directly at issue in the earlier CPO case. *Id*. at ¶ 29.

{¶5} After this Court's remand, J.P.'s claims against T.H. were tried to a jury. T.H. moved for a directed verdict on the claims for invasion of privacy and defamation after J.P. presented his case-in-chief. The trial court denied the motion, which T.H. renewed at the close

of all of the evidence. T.H. also moved for a directed verdict on the assault and battery claims at that time. The trial court denied the motions again, and the jury returned verdicts in favor of J.P. and awarded him $13,326.99 in damages.

{¶6}   T.H. appealed, raising five assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE LOWER COURT COMMITTED ERRORS OF LAW WHEN IT FAILED TO ISSUE DIRECTED VERDICTS AS TO [J.P.]'S CAUSE[] OF ACTION FOR DEFAMATION IN LIGHT OF THE LOWER COURT'S DECISION IN CASE NO. 14CV183837 AND THIS HONORABLE COURT'S SUBSEQUENT DECISION UPHOLDING SAME IN CASE NO. 14CA010715.

{¶7}   In his first assignment of error, T.H. argues that the trial court erred by denying his motion for a directed verdict on J.P.'s defamation claim. Specifically, T.H. argues that J.P. failed to demonstrate that T.H. made false statements and failed to present any evidence that T.H. acted with actual malice. With respect to the truth or falsity of T.H.'s statements, this Court agrees.

{¶8}   A motion for directed verdict tests the legal sufficiency of the evidence supporting a claim. *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 68 (1982). Consequently, under Civ.R. 50(A)(4), a motion for directed verdict can only be granted when, having construed the evidence most strongly in favor of the nonmoving party, the trial court concludes that reasonable minds could only reach a conclusion upon the evidence submitted that is adverse to the nonmoving party. Conversely, if there is substantial and competent evidence supporting the position of the nonmoving party and reasonable minds might reach different conclusions, a trial court must deny the motion. *Hawkins v. Ivy*, 50 Ohio St.2d 114, 115 (1977). "The 'reasonable minds' test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists

any evidence of substantive probative value that favors the position of the nonmoving party." *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 3. Nonetheless, this determination does not involve either weighing the evidence or evaluating the credibility of witnesses. *Wagner v. Roche Laboratories*, 77 Ohio St.3d 116, 119 (1996), quoting *Ruta* at 68-69. This Court must review a trial court's determination of a motion for a directed verdict de novo. *Goodyear* at 514.

{¶9} Defamation consists of the publication of a false statement made with "some degree of fault" that reflects injuriously upon the subject's reputation, exposes the subject to "public hatred, contempt, ridicule, shame or disgrace," or adversely affects the subject in his or her business, trade, or profession. *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995). Stated differently, the elements of a defamation claim are "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff." *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (9th Dist.1996).

{¶10} Defamation per se consists of a false statement that is defamatory on its face, without the need for interpretation or innuendo. *Northeast Ohio Elite Gymnastics Training Ctr., Inc. v. Osborne*, 183 Ohio App.3d 104, 2009-Ohio-2612, ¶ 7 (9th Dist.). Spoken words that falsely accuse the subject of a crime that exposes the accused to infamous punishment are defamation per se. *Radcliff v. Steen Elec., Inc.*, 162 Ohio App.3d 596, 2007-Ohio-5117, ¶ 14 (1st Dist.), citing *Williams v. Gannett Satellite Information Network, Inc.*, 1st Dist. Hamilton No. C-040635, 2005-Ohio-4141, ¶ 8. Imprisonment is a form of "infamous punishment." *See State*

*v. Uskert*, 85 Ohio St.3d 593, 599 (1999), quoting *Hudson v. U.S.*, 522 U.S. 93, 104 (1997). When a statement constitutes defamation per se, the existence of actual malice and damages is presumed. *Webber v. Ohio Dept. of Pub. Safety*, 10th Dist. Franklin No. 17AP-323, 2017-Ohio-9199, ¶ 36.

{¶11} J.P. alleged that T.H. was liable for defamation per se because he made statements to third parties that accused J.P. of striking him and pulling a gun on him during the June 22, 2014, incident. Because J.P. alleged defamation per se, his allegations focused on the extent to which T.H.'s statements related to the firearm. During the trial, T.H. testified regarding the events on June 22, 2014, as follows:

> It was in the afternoon. I was coming back from the pool. I had a towel around my neck, baseball cap on, glasses. I was on my bike. And [J.P.] was * * * standing in the driveway, yelling, with his camera. This was something that often occurred.
>
> And, foolishly, I stopped my bike. And I got off the bike, and I started walking towards, from the street to the sidewalk. And I just said, "What's the problem?" You know, "What's going on?"
>
> And that's when he launched at me, and he hit me about five or six times across the top of the hat, the bill of the hat. He didn't use fists. He just - - kind of like slapping event. But it startled me totally, and I fell back with my bike, kind of fell down on my bike. Popped a calf muscle.
>
> And, as I got up, and to just collect myself - - and I wasn't hurt, and I certainly didn't - - there were no blows on my end. None. Zero.
>
> And, as I got up, that's when he produced the gun, pointed it at me, then he quickly put it away. And this all happened within seconds.

T.H. acknowledged that he had told some people "the same story" that was the substance of his testimony and that, "[m]aybe, many months later, possibly[]" he told some people that J.P. had committed a crime against him. He explained that those statements would have been after he spoke with his attorney, who explained that "[a]ssault with a deadly weapon is a felony offense[.]" J.P. did not dispute that he pulled a gun on T.H. during the incident, but maintained

that he was legally privileged to do so because he was acting in self-defense. In other words, J.P. did not dispute that it was factually true that he pulled a gun on T.H., but he argued that he did not commit a crime in doing so.

{¶12} Even viewing T.H.'s testimony in the light most favorable to J.P., reasonable minds could only conclude that T.H. did not, with a level of culpability of at least negligence, make a false statement that accused J.P. of a crime that subjected him to infamous punishment. Although T.H. and J.P.'s testimony regarding the initial moments of the confrontation on June 22, 2014, differed, there is no dispute that J.P. did, in fact, draw a firearm and direct it toward T.H. J.P.'s arguments relate not to the truth or falsity of that statement, but to the legal privilege that may have attached in his favor. A reasonable trier of fact, however, could not conclude that T.H. was negligent in his representations to third parties based on J.P.'s subsequent assertion of a legal privilege. *See generally Cleveland Metro. Bar Assn. v. Berk*, 132 Ohio St.3d 82, 2012-Ohio-2167, ¶ 12, quoting *Black's Law Dictionary* 1133 (9th Ed.2009) (recognizing that "negligence is defined as '[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.'").

{¶13} In this respect, the earlier decision of the trial court in the CPO case, which was subsequently affirmed by this Court in *J.P. I*, was also relevant to the trial court's legal determination. As this Court concluded in *J.P. II*, these decisions did not have preclusive effect for purposes of res judicata. Nonetheless, they bear on whether T.H., with fault attaining at least the level of negligence, made a false statement that amounted to defamation per se because any such statements would have occurred well after the full hearing on J.P.'s petition for a CPO and the subsequent dismissal of that petition.

{¶14}   The trial court erred by denying T.H.'s motion for a directed verdict on J.P.'s claim for defamation per se.  His first assignment of error is sustained.

**ASSIGNMENT OF ERROR NO. 2**

THE LOWER COURT ABUSED ITS DISCRETION AND COMMITTED CLEAR ERRORS OF LAW WHEN IT FAILED TO ISSUE A DIRECTED VERDICT AS TO [J.P.]'S CLAIM[] OF INVASION OF PRIVACY WHEN [J.P.] BOTH ADMITTED THAT [T.H.]'S SOLE INGRESS AND EGRESS REQUIRED HIM TO GO PAST [J.P.]'S RESIDENCE A SHORT DISTANCE AWAY;  AND  [J.P.]  ALSO  ADMITTED  THAT  [T.H.]  HAD  A CONSTITUTIONAL RIGHT OF FREE MOVEMENT; AND THE EVIDENCE OF STALKING CONSISTED SOLELY OF [J.P.] SERIALLY VIDEOTAPING GOING ABOUT NORMAL AND USUAL AFFAIRS WITHOUT A CLEAR LEGAL RIGHT TO DO SO.  A DIRECTED VERDICT FOR [T.H.] SHOULD HAVE BEEN GRANTED.

{¶15}   T.H.'s second assignment of error argues that the trial court erred by denying his motion for a directed verdict on J.P.'s claim for invasion of privacy.  This Court disagrees.

{¶16}   As noted above, a motion for a directed verdict tests the legal sufficiency of the evidence supporting a claim.  *Ruta*, 69 Ohio St.2d at 68.  Neither the credibility of witnesses nor the weight to be given the evidence are matters for consideration under Civ.R. 50(A).  *Wagner*, 77 Ohio St.3d at 119, quoting *Ruta* at 68-69.  The tort of invasion of privacy includes a claim for "'the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'"  *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, ¶ 15, quoting *Housh v. Peth*, 165 Ohio St. 35 (1956), paragraph two of the syllabus.  The tort "is akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs[]" including, for example, "wiretapping [and] watching or photographing a person through windows of his residence[.]"  *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166 (10th Dist.1985).  A plaintiff must demonstrate that he or she had

a reasonable expectation of privacy in the area in which the alleged intrusion occurred. *Olson v. Holland Computers*, 9th Dist. Lorain No. 06CA008941, 2007-Ohio-4727, ¶ 18.

{¶17} T.H. argues that the trial court erred by denying his motion for a directed verdict because the evidence demonstrated that it was J.P.—not T.H.—who engaged in actions that would constitute an invasion of privacy, such as routinely video recording his neighbors' activities. He has also argued that the actions to which J.P. points as evidence of an intrusion upon his seclusion actually reflected T.H.'s normal, necessary movements in and around his own home. In other words, T.H. argues that the evidence at trial weighed against the conclusion that he was liable for an invasion of J.P.'s privacy by intruding upon his seclusion. Because a motion for a directed verdict tests the *sufficiency* of the evidence supporting a claim, however, this Court does not consider the weight of the evidence or evaluate the credibility of witnesses and must, instead, view the evidence in the light most favorable to J.P. *See Ruta* at 68; *Goodyear Tire & Rubber Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 3; *Wagner* at 119. T.H. has not argued that the evidence at trial was insufficient to demonstrate the elements of J.P.'s invasion of privacy claim, nor has he articulated what those elements are in the first instance.

{¶18} In that respect, this Court notes that a sustained pattern of behavior that can be considered "a systematic campaign of harassment" may constitute an actionable invasion of privacy. *See Housh* at 41; *Killilea* at 166. *See also Weaver v. Pillar*, 5th Dist. Tuscarawas No. 2012-CA-32, 2013-Ohio-1052, ¶ 29-31 (recognizing, as in *Housh*, that aggressive collection techniques by a debt collector may rise to the level of an invasion of privacy); *Irvine v. Akron Beacon Journal*, 147 Ohio App.3d 428, 2002-Ohio-2204, ¶ 28-34 (recognizing that a claim for invasion of privacy may be stated against a telemarketer based upon repeated telephone calls). Because T.H. has neither articulated the elements of a claim for invasion of privacy premised

upon intrusion upon seclusion nor argued that the evidence was insufficient to establish those elements in this case, this Court takes no position on the legal question of whether an action for invasion of privacy can be sustained based on a pattern of behavior such as the one identified by J.P. Nonetheless, this Court notes that other courts have limited application of this principle to circumstances involving debt collection and telemarketing activity, and one court has observed that Ohio does not recognize a claim for "civil harassment." *Misseldine v. Corporate Investigative Servs., Inc.*, 8th Dist. Cuyahoga No. 81771, 2003-Ohio-2740, ¶ 41.

{¶19} T.H.'s second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE LOWER COURT ABUSED ITS DISCRETION AND COMMITTED CLEAR PREJUDICIAL ERROR WHEN THE LOWER COURT REFUSED TO ALLOW [T.H.] TO CALL THE AVON LAKE, OHIO PROSECUTOR RUELBACH TO TESTIFY AS TO THE DISMISSAL OF THE UNDERLYING ASSAULT CHARGE AFTER HIS INDEPENDENT AND FIRST VIEW OF THE FILED CASE GIVEN THAT THE LOWER COURT THEN REPEATEDLY GAVE FREE REIN TO [J.P.] TO ARGUE AND ELICIT TESTIMONY THAT IT WAS TRUE THAT [T.H.] ASSAULTED HIM BECAUSE "THE POLICE" ARRESTED HIM.

{¶20} In his third assignment of error, T.H. argues that the trial court abused its discretion by excluding the testimony of the prosecutor who dismissed the charges filed against T.H. after the incident of June 22, 2014.

{¶21} As a general rule, this Court reviews the admission or exclusion of relevant evidence for an abuse of discretion. *M.S. by Slyman v. Toth*, 9th Dist. Medina No. 16CA0038-M, 2017-Ohio-7791, ¶ 43, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. Because trial courts enjoy broad discretion in the admission and exclusion of evidence, this Court will only conclude that there is reversible error when there has been a clear abuse of discretion that resulted in material prejudice. *See State v. Thompson*, 141 Ohio St.3d 254, 2014-

Ohio-4751, ¶ 111, citing *State v. Long*, 53 Ohio St.2d 91, 98 (1978) and *Sage* at paragraph two of the syllabus.

{¶22}  T.H.'s brief does not explain under what Rules of Evidence, if any, the trial court erred, nor does it direct this Court to any other authority that would provide a framework for our analysis of this assignment of error.  *See generally* App.R. 16(A)(7); Loc.R. 7(B)(7) of the Ninth District Court of Appeals.  Because his brief focuses on the prejudice that he alleges to have suffered as a result of the trial court's ruling, this Court takes no position on whether the trial court's decision to exclude the prosecutor's testimony was substantively erroneous, and our discussion is limited to whether T.H. was prejudiced by that decision.

{¶23}  During trial, one of the officers who responded to the June 22, 2014, incident testified that he spoke to J.P. and a neighbor at the scene.  The officer related the substance of J.P.'s statements and noted that T.H. was arrested, but J.P. was not charged.  The officer also testified that the charges against T.H. were dismissed and that T.H. did not seek charges against J.P. arising from the incident.  During a sidebar, T.H. summarized his purpose for calling the prosecutor to testify:

> I expect him to testify to what the procedures are for charging, who makes the charge; that would be the officer, not him.  What he does after the charge is made.  And what he reviewed in making his determination to dismiss the case.
>
> * * *
>
> Your Honor, I'm not going to ask him what his reasons were for dismissing.  I'm going to ask him what he did, what he reviewed, before he dismissed the case.

Further clarifying his purposes in calling the prosecutor, T.H. emphasized the testimony would be limited to "procedures."

{¶24}  The jury heard testimony that T.H. was charged, but that the charges were dismissed and, consequently, that neither T.H. nor J.P. was prosecuted for their actions on June

22, 2014. Given that the proffered substance of the prosecutor's testimony would have been limited to a description of procedural matters and not his reasons for dismissing the charges related to the June 22, 2014, incident, this Court cannot conclude that T.H. was materially prejudiced by its exclusion. His third assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 4

THE LOWER COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO CURTAIL [J.P.]'S CLOSING ARGUMENT WHEREIN HE ARGUED THAT "THE POLICE DECISION" TO CHARGE [T.H.] WITH ASSAULT DEMONSTRATED WHO WAS TELLING THE TRUTH AS THE LOWER COURT HAD BEEN INFORMED BY [T.H.]'S PROFFER OF THE PROSECUTOR'S TESTIMONY THAT ONE OFFICER WHO INTERVIEWED [J.P.] SOLELY DECIDED TO ISSUE THE CHARGE BASED UPON THAT INTERVIEW.

{¶25} T.H.'s fourth assignment of error argues that he was prejudiced by improper statements made by J.P. during his closing argument.

{¶26} T.H. did not object to J.P.'s statements, so he has forfeited all but plain error in connection with this assignment of error. *See Rising v. Litchfield Bd. of Twp. Trustees*, 9th Dist. Medina No. 16CA0010-M, 2016-Ohio-6971, ¶ 16, citing *Katie L. v. Dennis M.*, 9th Dist. Medina No. 15CA0010-M, 2016-Ohio-338, ¶ 5. "In civil cases, like this one, the application of the plain error doctrine is reserved for the rarest of circumstances." *Katie L.* at ¶ 5, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. As the Ohio Supreme Court has explained:

> In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Goldfuss* at syllabus. The application of the plain error doctrine in civil cases is "strictly limited to those occasions when the error impugn[s] the character and public image of the judicial process." *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 40.

{¶27} T.H. has acknowledged that his arguments are limited to plain error, but he has done so with reference to the standard of review applicable to criminal cases. *See generally Long*, 53 Ohio St.2d 91 at paragraph three of the syllabus. The civil and criminal standards for recognizing plain error on appeal, however, differ substantially. *See Morgan* at ¶ 35-41, 48-49. Although T.H. has argued that he was prejudiced by J.P.'s allegedly improper comments during closing argument, he has not argued that those comments "impugned the character and public image of the judicial process." *Id*. at ¶ 40. Nonetheless, we recognize that error is the starting point for this Court's analysis of plain error in civil cases as well as criminal cases. *See State v. Hill*, 92 Ohio St.3d 191, 200 (2001). *See also Morgan* at ¶ 36, 41. Because T.H. has not identified error on the part of the trial court, it follows that he cannot demonstrate plain error.

{¶28} Counsel enjoys significant latitude during closing argument, and the question of whether argument goes beyond the bounds of what is permissible is one entrusted to the discretion of the trial court. *Pesek v. Univ. Neurologists Assn., Inc.*, 87 Ohio St.3d 495, 501 (2000). *See also Pang v. Minch*, 53 Ohio St.3d 186 (1990), paragraphs two and three of the syllabus. A trial court "is not required to intervene sua sponte to admonish counsel and take curative action" regarding improper statements during closing argument in a civil case unless counsel "grossly and persistently abuses his privilege." *Snyder v. Stanford*, 15 Ohio St.2d 31 (1968), paragraph one of the syllabus, superseded by rule on other grounds as noted in *King v. Branch Motors Express Co.*, 70 Ohio App.2d 190, 197 (2d Dist.1980).

{¶29} In support of this argument, T.H. points to the following statement made by J.P. during closing argument:

> And, remember, those officers, they didn't just take statements. They observed for themselves what they saw at the scene, and they formed an opinion of the truth-telling or lack of truth-telling of the people who gave statements. They

didn't just regurgitate what I told them. They observed my demeanor, the scene, their witnesses' demeanor, and, still, those seasoned officers arrested [T.H.].

J.P.'s statement—which is the sole incident to which T.H. directs this Court's attention—is a fair comment on the testimony of the police officer who responded to J.P.'s 911 call after the June 22, 2014, incident. The officer testified about his observations at the scene, including apparent injuries to J.P., and the conversation that he had with J.P. Although he testified that T.H. was arrested, he also acknowledged during his cross-examination that he did not witness the altercation and that the charges against T.H. were later dismissed.

{¶30} The inferences drawn by J.P. in this statement were not unwarranted given the testimony in evidence, nor were his statements beyond the bounds of acceptable professional conduct during closing argument. *See*, *e.g.*, *Pesek* at 501-502 (noting that counsel "made various assertions and drew many inferences that were simply not warranted by the evidence[]" and attacked opposing counsel and expert witness in a manner that was "inexcusable, unprincipled, and clearly outside the scope of final argument."). Even were we to conclude that J.P.'s statement was an improper comment on the evidence, a single statement during closing argument in isolation does not constitute the gross and persistent abusive conduct identified in *Snyder* and *Pesek*. *See Riechers v. Biats*, 9th Dist. Summit No. 25248, 2010-Ohio-6448, ¶ 13-14.

{¶31} The trial court did not err by permitting J.P.'s statements during closing argument. Because "error * * * [is] the starting point for a plain-error inquiry[,]" T.H.'s fourth assignment of error is overruled. *See Hill*, 92 Ohio St.3d at 200.

## ASSIGNMENT OF ERROR NO. 5

THE LOWER COURT ERRED IN DENYING A NEW TRIAL.

{¶32} T.H.'s fifth assignment of error argues that the trial court erred by denying his motion for a new trial based on the trial court's decision to exclude the prosecutor's testimony and on J.P.'s comments during closing argument.

{¶33} Civ.R. 59(A) provides that a new trial may be granted based upon:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

(2) Misconduct of the jury or prevailing party; [and]

* * *

(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

A decision granting or denying a motion for a new trial under Civ.R. 59(A)(1), (2), or (9) is reviewed for an abuse of discretion. *See McMichael v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 28333, 2017-Ohio-7594, ¶ 41 (Civ.R. 59(A)(1)); *Sheffield v. Estate of Bentley*, 12th Dist. Fayette No. CA2014-12-020, 2015-Ohio-3834, ¶ 10 (Civ.R. 59(A)(2)); *Javorsky v. Natl. RR. Passenger Corp.*, 9th Dist. Wayne No. 06CA0075, 2008-Ohio-342, ¶ 8 (Civ.R. 59(A)(9)).

{¶34} This Court has considered the substance of the arguments underlying T.H.'s motion for a new trial in our analysis of his third and fourth assignments of error. Having concluded that the trial court did not err in either respect, it follows that the trial court did not abuse its discretion by denying his motion for a new trial on those substantive grounds.

{¶35} T.H.'s fifth assignment of error is overruled.

III.

{¶36} T.H.'s first assignment of error is sustained. His second, third, fourth, and fifth assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas

15

is affirmed in part and reversed in part, and this matter is remanded to the trial court for proceedings consistent with this opinion.

> Judgment affirmed in part,
> reversed in part,
> and cause remanded.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

GERALD WALTON and JOHN J. SCHNEIDER, Attorneys at Law, for Appellant.

J. P., pro se, Appellee.